# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**DAVID NUYEN,**

   **Petitioner-Appellant**

   **v.**

**HONG THAI LY,**                                    Case No:

   **Respondent-Appellee**

## <u>PETITION TO VACATE ARBITRATION AWARD</u>

Appellant, David Nuyen, petitions this Court for an order vacating and setting aside the award made in the above-entitled matter on June 16, 2014. P. Exh. A

Jurisdiction is founded on federal diversity pursuant to 28 USC 1332 and 9 USC 4. Petitioner, Nuyen, resides in the State of Maryland. Respondent, Hong Thai Ly, resides in Caracas, Venezuela. The amount of the claim in this action exceeds $75,000.

Grounds for vacatur are that the arbitrator exceeded his authority in deciding the merits of a purported Arbitration Agreement between the parties. 9USCA 10(a)(4)

Claimant-appellant, Nuyen, asserted a claim to arbitration pursuant to the language of the arbitration clauses found in the parties purported Arbitration Agreements:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with judgment upon the award rendered may be entered in any court having jurisdiction thereof. Cl.12, at 4, "Partnership Agreements"P. Exh.B

However, Respondent Ly contested the authenticity of the three (3) Partnership Agreements on the ground that she had not signed the Agreements. The arbitrator

RECEIVED
Mail Room
JUN 3 0 2014
Angela D. Caesar, Clerk of Court
District Court, District of Columbia

concurred with the Respondent that no "Partnership Agreements" existed. Claimant, Nuyen's, attempt to prove her signature appeared on the Agreements proved to be insufficient based on Arbitrator's ruling. P. Exh. B [Cl.12] at 4.

After making this ruling, the arbitrator went on to decide the merits of Nuyen's claim and made an award against him. Since there was no authority for the arbitrator to act once the parties' agreements, containing the arbitration clause, were ruled invalid, the arbitrator had no authority to act on the merits and thus exceeded his authority. *See* Decision and Award, at 4.

There being no express contractual basis for an arbitration award, it must be vacated and Appellant, Nuyen, must be granted jurisdiction to have his case heard in this judicial forum.

Respectfully submitted,

Daniel Wemhoff, esq. #420283
4600 S. Four Mile Run Dr. #831
Arlington, VA 22204
(703) 589-2199

**Certificate of Service**

I hereby certify that I have mailed a copy of the foregoing Petition to Vacate Arbitration Award to: Justin Dillon at The Kaiser Law Firm, 1400 I Street NW, Washington, DC 20036, on this date, the 24th of June 2014.

Daniel Wemhoff

## Neda Shahghasemi, Esq.

| | |
|---|---|
| **From:** | AAA Neda Shahghasemi, Esq. |
| **Sent:** | Wednesday, June 18, 2014 10:57 AM |
| **To:** | 'dan wemhoff (danwem@yahoo.com)'; 'Matt Kaiser (mkaiser@tklf.com)'; 'Allison Lansell (alansell@tklf.com)'; 'jdillon@tklf.com' |
| **Subject:** | Distributing Final Award - David Dieu Nguyen v. Hong Thai Ly - AAA Case No. 16 115 Y 00406 13 |
| **Attachments:** | Decision and Award-Signed.pdf |

Dear Counsel:

By direction of the Arbitrator we herewith transmit to you the duly executed Award. We have now closed this case as awarded. As a reminder, parties should not communicate with the Arbitrator directly. Any necessary communication shall be directed to the Association.

At this time we have verified with the Arbitrator that he has submitted all requests for compensation and expenses in this matter. Accordingly, we have conducted a final reconciliation of the finances and will be providing each party with a final statement separately. If a party had any unused compensation deposits, we have issued a refund check that should arrive in the mail shortly.

Note that the final statement reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the Arbitrator, pursuant to the Rules, is addressed in the Award and is stated as one party's obligation to reimburse the other party for costs incurred.

As a courtesy, a copy of this email and attachment is being mailed to Mr. Wemhoff at: Dan Wemhoff, Esq., 4600 S. Four Mile Run Dr. #831, Arlington, VA.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter.

Sincerely,

## AMERICAN ARBITRATION ASSOCIATION

\*

David Dieu Nuyen,

        Claimant,           \*

and                      \*     Case No.  16 115 Y 00406 13

                         \*

Hong Thai Ly,

        Respondent.       \*

   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DECISION AND AWARD OF ARBITRATOR

The undersigned Arbitrator was appointed to serve in the above-captioned case, in accordance with the Commercial Rules of the American Arbitration Association, and was duly sworn.  The Arbitrator conducted a preliminary hearing via teleconference on October 22, 2013, and a Scheduling Order was entered.  An evidentiary hearing was held on May 27 and 28, 2014, and the hearing was declared closed on May 28, 2014. At the hearing, each party was represented by counsel, and each was given a full opportunity to present evidence and arguments. The undersigned Arbitrator, having fully considered all of the evidence and arguments, has decided to issue this award.[1]

This case was initiated by the Claimant David Nuyen ("Mr. Nuyen") filing a demand for arbitration against the Respondent Hong Thai Ly ("Ms. Ly"). Mr. Nuyen alleged three separate partnership agreements between the parties. Each of the partnership agreement documents provided for resolution of disputes via arbitration, using the following language:

> Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. <u>Claimant's Ex. 2.</u>

Although she denied the existence of the partnership agreements alleged by Mr. Nuyen, Ms. Ly agreed to resolve the case by submitting to this arbitration.

---

[1] The parties did not request a particular form of Award.  However, the Arbitrator wishes to provide the parties with some written rationale for the Award, to elucidate for the parties the Arbitrator's thinking on the issues.  This reasoned form of Award is not intended to delineate every factual finding, or to set forth every argument which was accepted or rejected during the Arbitrator's deliberations.

Mr. Nuyen alleged that he and Ms. Ly entered into three separate partnership agreements, for three separate parcels of improved real estate. The purpose of the alleged partnerships was the acquisition, development, management, and sale of three real properties: two multi-unit residential buildings in the District of Columbia, and one shopping center in Virginia. In his initial claim, Mr. Nuyen claimed damages in the amount of $5,000,000.00. He later requested that an accounting be ordered for each partnership.

Mr. Nuyen, who bore the burden of proof, failed to prove that he and Ms. Ly had partnership agreements. He offered into evidence, collectively marked as Exhibit 2, three written agreements, which he testified he drafted without assistance of counsel. One of the three agreements is purported to have been signed and dated on April 10, 2002. The other two purported partnership agreements purport to have been signed and dated on July 2, 2003. The agreements allude to the formation of limited liability companies, but there was no evidence that any such company was ever created with respect to the properties.

In a Complaint of Intervenor and Third-Party Plaintiff filed by Mr. Nuyen in the Superior Court of the District of Columbia Civil Division in Case No. 2012CA003655 (Respondent's Ex. 2J), Mr. Nuyen alleged that he entered into a written partnership agreement with Ms. Ly on July 2, 2003. By contrast, at the hearing in this arbitration, Mr. Nuyen testified that he and Ms. Ly's partnership agreements were verbal, not written, and were reached in 2002 and 2003. Mr. Nuyen could not remember the dates of the alleged verbal partnership agreements. Mr. Nuyen utterly failed to prove the essential terms of any alleged verbal partnership agreement.

When questioned about the written partnership agreements, Mr. Nuyen testified that, sometime in 2012, Ms. Ly signed the three written partnership agreements, while sitting in a car in a parking lot. Mr. Nuyen testified that they agreed to back-date the written agreements to 2002 and 2003, and that he guessed at the particular dates. His testimony concerning execution of the written Partnership Agreements was not only unusual, it was incredible.

Ms. Ly denied ever having such partnership agreements with Mr. Nuyen and denied signing the written partnership agreements marked as Claimant's Exhibit 2. Ms. Ly produced evidence that she was not even in the United States at the time when Mr. Nuyen says she signed the partnership agreements.

2

The parties both acknowledged that they had a romantic relationship, and in fact lived together, for a period of time from 2002 through 2005.  Mr. Nuyen produced copies of emails exchanged between the parties which showed that the parties had continuing communications after the end of their romantic relationship about some sort of business transaction. There was evidence of one or more business transactions with a Mr. John Bae. However, Mr. Nuyen failed to prove the existence or terms of the real estate partnerships which he alleged. Moreover, he did not prove any breach of contract, even assuming for the sake of argument that a contract existed.

The parties each had an expert witness testify concerning their opinions as to whether Ms. Ly's signatures on Claimant's Exhibit 2, the three written partnership agreements, were genuine. In my view, the most generous conclusion which could be drawn from the competing experts' testimonies is that such evidence was in a state of equipoise as to whether Ms. Ly signed. The expert opinion testimony, taken as a whole, did not satisfy Mr. Nuyen's burden of proof. The lay testimony provided almost no support for Mr. Nuyen.

Undermining Mr. Nuyen's allegations, his own handwriting expert Beverly East was quite clear that Mr. Nuyen told her in April, 2014, that the partnership agreements were signed by Ms. Ly in 2003. This directly contradicted Mr. Nuyen's testimony at the arbitration hearing that the documents were signed in 2012 and then back-dated to 2003.

It was also proven, without contradiction, that Mr. Nuyen was being held in a federal penitentiary, serving a sentence for fraud, on the dates when he later alleged verbal partnership agreements with Ms. Ly were reached. Because Mr. Nuyen failed to prove the existence of either the verbal or written partnership agreements which he alleged, his claims will be denied[2].

After the hearing was declared closed, Mr. Nuyen, through his counsel, submitted another paper requesting that another hearing be set to allow for an accounting for each of the alleged partnerships. Neither party made a timely request for permission to file any post-hearing papers. No post-hearing submissions were requested by the Arbitrator. If the post-hearing submission on behalf of Mr. Nuyen is considered a request to amend his claim, such request is denied, as untimely and plainly prejudicial to the Respondent. If the post-hearing submission on behalf of Mr. Nuyen is considered a request to file a supplemental memorandum arguing for additional relief, permission for such filing is denied. Moreover, even if Mr. Nuyen's post-hearing filing

---

[2] Mr. Nuyen also failed to prove any compensable damages, and even if Mr. Nuyen had proven partnership agreements with Ms. Ly, most of his claims would be barred by laches and/or limitations.

were considered, the outcome of this case would not change, because Mr. Nuyen failed to prove any element of a legal cause of action against Ms. Ly.

The Claimant failed to prove the existence of any of the alleged partnership agreements with Ms. Ly with respect to the three subject properties, so all relief requested by the Claimant is hereby denied. The Award in this case is in favor of the Respondent Hong Thai Ly.

The administrative fees and expenses of the American Arbitration Association totaling $11,450.00 shall be borne by Claimant, and the compensation and expenses of the Arbitrator totaling $5,598.00 shall be borne by Claimant. Therefore, Claimant shall pay Respondent the sum of $2,799.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Respondent. Any amounts due from Claimant to Respondent which remain unpaid ten days after the date of this Award shall also bear interest at the rate of 10% per annum.

This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly ruled upon are denied.

Date: June ___16___, 2014

_____
Matthew B. Ruble, Arbitrator

I, Matthew B. Ruble, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Date: June ___16___, 2014

_____
Matthew B. Ruble, Arbitrator

4

PℓT. EℋT. ℬ

# PARTNERSHIP AGREEMENT

This Partnership Agreement is made on July 2nd, 2003 between David Nuyen (Partner One). and Hong Thai Ly (Partner Two).

1. **Name and Business**
The parties hereby form a partnership to purchase the property located as described in the deed to Laramie Irongate Limited Partnership, a Virginia limited partnership dated May 20, 1997 and recorded on May 22, 1997 in Deed Book 3052 at Page 135 among the Land Records of the County of Chesterfield, Commonwealth of Virginia. The name of the business is IRONGATE MUTUAL LLC.

2. **Term**
The Partnership shall begin on the date of signing this Agreement and shall continue until terminated.

3. **Capital**
The capital of the partnership shall be contributed in cash by the partners as follows:
   - Partner One shall provide the cash obtained from Service Capital LLC in the amount of $450,000.
   - Partner Two shall provide the remaining required cash for the transaction and all the management necessary for the shopping center.

4. **Profit and Loss**
The net profits of the partnership shall be divided equally between the partners and the net losses shall be borne equally by them.

5. **Salaries and Withdrawals**
Neither partner shall receive any salary for services rendered to the partnership.

6. **Interest**
No interest shall be paid on the initial contributions to the capital of the partnership or on any subsequent contributions of capital.

7. **Management Duties and Restrictions**
The partners shall have equal rights in the management of the partnership business, and Partner Two shall devote her entire time to the conduct of the business. Partner One is a silent partner and pays all initial set-up costs for the company. Partner Two shall devote her time as she sees fit. Without the consent of the other partner neither partner shall on behalf of the partnership borrow or lend money, or make, deliver, or accept any commercial paper, or execute any mortgage, security agreement, bond, or lease, or purchase or contract to

purchase, or sell or contract to sell any property for or of the partnership other than the type of property bought and sold in the regular course of its business.

8. **Banking**

All funds of the partnership shall be deposited in its name in such checking account or accounts as shall be designated by the Partner Two.

9. **Books**

The partnership books shall be maintained at the principal office of the partnership, and each partner shall at all times have access thereto. The books shall be kept on a fiscal year basis, and shall be closed and balanced at the end of each fiscal year. An audit shall be made as of the closing date.

10. **Voluntary Termination**

The partnership may be dissolved at any time by agreement of the partners, in which event the partners shall proceed with reasonable promptness to liquidate the business of the partnership. The partnership name shall be sold with the other assets of the business. The assets of the partnership business shall be used and distributed in the following order:

(a) to pay or provide for the payment of all partnership liabilities and liquidating expenses and obligations;

(b) to equalize the income accounts of the partners;

(c) to discharge the balance of the income accounts of the partners;

(d) to equalize the capital accounts of the partners; and

(e) to discharge the balance of the capital accounts of the partners.

11. **Death**

Upon the death of either partner, the surviving partner shall have the right either to purchase the interest of the decedent in the partnership or to terminate and liquidate the partnership business. If the surviving partner elects to purchase the decedent's interest, he shall serve notice in writing of such election, within three months after the death of the decedent, upon the executor or administrator of the decedent, or, if at the time of such election no legal representative has been appointed, upon any one of the known legal heirs of the decedent at the last-known address of such heir.

(a) If the surviving partner elects to purchase the interest of the decedent in the partnership, the purchase price shall be equal to the decedent's capital account as at the date of their death plus the decedent's income account as at the end of

the prior fiscal year, increased by their share of partnership profits or decreased by their share of partnership losses for the period from the beginning of the fiscal year in which their death occurred until the end of the calendar month in which their death occurred, and decreased by withdrawals charged to their income account during such period. No allowance shall be made for goodwill, trade name, patents, or other intangible assets, except as those assets have been reflected on the partnership books immediately prior to the decedent's death; but the survivor shall nevertheless be entitled to use the trade name of the partnership.

(b) Except as herein otherwise stated, the procedure as to liquidation and distribution of the assets of the partnership business shall be the same as stated in paragraph 10 with reference to voluntary termination.

12. **Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. In witness whereof the parties have signed this Agreement.

Executed this _____2nd_____ day of ___July  2003___ , in Silver Spring, Maryland.

_____          _____
*Signature of Party 1*                      *Signature of Party 2*



# PARTNERSHIP AGREEMENT

This Partnership Agreement is made on April 10th, 2002 between David Nuyen (Partner One). and Hong Thai Ly (Partner Two).

1.　　**Name and Business**

The parties hereby form a partnership to purchase the property located at 1125 12th Street, NW, Washington, DC 20005 ( also known as TWELVETH STREET BUILDING). The name of the business is NEW TWELVE STREET BUILDING, LLC.

2.　　**Term**

The Partnership shall begin on the date of signing this Agreement and shall continue until terminated.

3.　　**Capital**

The capital of the partnership shall be contributed in cash by the partners as follows:

- Partner One shall provide all expenses related to the transaction of the TWELVE STREET BUILDING from Partner One to Partner Two.
- Partner Two shall provide all the management necessary for the conversion of this TWELVE STREET BUILDING from the apartment building to the condominium.

4.　　**Profit and Loss**

The net profits of the partnership shall be divided equally between the partners and the net losses shall be borne equally by them.

5.　　**Salaries and Withdrawals**

Neither partner shall receive any salary for services rendered to the partnership.

6.　　**Interest**

No interest shall be paid on the initial contributions to the capital of the partnership or on any subsequent contributions of capital.

7.　　**Management Duties and Restrictions**

The partners shall have equal rights in the management of the partnership business, and Partner Two shall devote her entire time to the conduct of the business. Partner One is a silent partner and pays all initial set-up costs for the company. Partner Two shall devote her time as she sees fit. Without the consent of the other partner neither partner shall on behalf of the partnership borrow or lend money, or make, deliver, or accept any commercial paper, or execute any mortgage, security agreement, bond, or lease, or purchase or contract to purchase, or sell or contract to sell any property for or of the partnership other than the type of property bought and sold in the regular course of its business.

8.   **Banking**

All funds of the partnership shall be deposited in its name in such checking account or accounts as shall be designated by the Partner Two.

9.   **Books**

The partnership books shall be maintained at the principal office of the partnership, and each partner shall at all times have access thereto. The books shall be kept on a fiscal year basis, and shall be closed and balanced at the end of each fiscal year. An audit shall be made as of the closing date.

10.   **Voluntary Termination**

The partnership may be dissolved at any time by agreement of the partners, in which event the partners shall proceed with reasonable promptness to liquidate the business of the partnership. The partnership name shall be sold with the other assets of the business. The assets of the partnership business shall be used and distributed in the following order:

(a) to pay or provide for the payment of all partnership liabilities and liquidating expenses and obligations;

(b) to equalize the income accounts of the partners;

(c) to discharge the balance of the income accounts of the partners;

(d) to equalize the capital accounts of the partners; and

(e) to discharge the balance of the capital accounts of the partners.

11.   **Death**

Upon the death of either partner, the surviving partner shall have the right either to purchase the interest of the decedent in the partnership or to terminate and liquidate the partnership business. If the surviving partner elects to purchase the decedent's interest, he shall serve notice in writing of such election, within three months after the death of the decedent, upon the executor or administrator of the decedent, or, if at the time of such election no legal representative has been appointed, upon any one of the known legal heirs of the decedent at the last-known address of such heir.

(a) If the surviving partner elects to purchase the interest of the decedent in the partnership, the purchase price shall be equal to the decedent's capital account as at the date of their death plus the decedent's income account as at the end of the prior fiscal year, increased by their share of partnership profits or decreased by their share of partnership losses for the period from the beginning of the

fiscal year in which their death occurred until the end of the calendar month in which their death occurred, and decreased by withdrawals charged to their income account during such period. No allowance shall be made for goodwill, trade name, patents, or other intangible assets, except as those assets have been reflected on the partnership books immediately prior to the decedent's death; but the survivor shall nevertheless be entitled to use the trade name of the partnership.

(b) Except as herein otherwise stated, the procedure as to liquidation and distribution of the assets of the partnership business shall be the same as stated in paragraph 10 with reference to voluntary termination.

12.   **Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. In witness whereof the parties have signed this Agreement.

Executed this _____10th_____ day of _____April 2002_____, in Silver Spring, Maryland.

_____          _____
Signature of Party 1                   Signature of Party 2



## PARTNERSHIP AGREEMENT

This Partnership Agreement is made on July 2nd, 2003 between David Nuyen (Partner One). and Hong Thai Ly (Partner Two).

1.   **Name and Business**

The parties hereby form a partnership to purchase the property located at 933 L Street, NW, Washington, DC 20001 ( also known as L STREET BUILDING). The name of the business is L STREET BUILDING LLC.

2.   **Term**

The Partnership shall begin on the date of signing this Agreement and shall continue until terminated.

3.   **Capital**

The capital of the partnership shall be contributed in cash by the partners as follows:

- Partner One shall provide the cash obtained from the selling of his two properties located at 5611 5th Street, NW and at 506 Longfellow Street, NW, Washington, DC 20011.
- Partner Two shall provide all the management necessary for the conversion of this L STREET BUILDING from the apartment building to the condominium or to hotel.

4.   **Profit and Loss**

The net profits of the partnership shall be divided equally between the partners and the net losses shall be borne equally by them.

5.   **Salaries and Withdrawals**

Neither partner shall receive any salary for services rendered to the partnership.

6.   **Interest**

No interest shall be paid on the initial contributions to the capital of the partnership or on any subsequent contributions of capital.

7.   **Management Duties and Restrictions**

The partners shall have equal rights in the management of the partnership business, and Partner Two shall devote her entire time to the conduct of the business. Partner One is a silent partner and pays all initial set-up costs for the company. Partner Two shall devote her time as she sees fit. Without the consent of the other partner neither partner shall on behalf of the partnership borrow or lend money, or make, deliver, or accept any commercial paper, or execute any mortgage, security agreement, bond, or lease, or purchase or contract to purchase, or sell or contract to sell any property for or of the partnership other than the type of property bought and sold in the regular course of its business.

8. **Banking**

All funds of the partnership shall be deposited in its name in such checking account or accounts as shall be designated by the Partner Two.

9. **Books**

The partnership books shall be maintained at the principal office of the partnership, and each partner shall at all times have access thereto. The books shall be kept on a fiscal year basis, and shall be closed and balanced at the end of each fiscal year. An audit shall be made as of the closing date.

10. **Voluntary Termination**

The partnership may be dissolved at any time by agreement of the partners, in which event the partners shall proceed with reasonable promptness to liquidate the business of the partnership. The partnership name shall be sold with the other assets of the business. The assets of the partnership business shall be used and distributed in the following order:

(a) to pay or provide for the payment of all partnership liabilities and liquidating expenses and obligations;

(b) to equalize the income accounts of the partners;

(c) to discharge the balance of the income accounts of the partners;

(d) to equalize the capital accounts of the partners; and

(e) to discharge the balance of the capital accounts of the partners.

11. **Death**

Upon the death of either partner, the surviving partner shall have the right either to purchase the interest of the decedent in the partnership or to terminate and liquidate the partnership business. If the surviving partner elects to purchase the decedent's interest, he shall serve notice in writing of such election, within three months after the death of the decedent, upon the executor or administrator of the decedent, or, if at the time of such election no legal representative has been appointed, upon any one of the known legal heirs of the decedent at the last-known address of such heir.

(a) If the surviving partner elects to purchase the interest of the decedent in the partnership, the purchase price shall be equal to the decedent's capital account as at the date of their death plus the decedent's income account as at the end of the prior fiscal year, increased by their share of partnership profits or decreased by their share of partnership losses for the period from the beginning of the

fiscal year in which their death occurred until the end of the calendar month in which their death occurred, and decreased by withdrawals charged to their income account during such period. No allowance shall be made for goodwill, trade name, patents, or other intangible assets, except as those assets have been reflected on the partnership books immediately prior to the decedent's death; but the survivor shall nevertheless be entitled to use the trade name of the partnership.

(b) Except as herein otherwise stated, the procedure as to liquidation and distribution of the assets of the partnership business shall be the same as stated in paragraph 10 with reference to voluntary termination.

12. **Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. In witness whereof the parties have signed this Agreement.

Executed this _____ 2nd _____ day of _ July   2003 _, in Silver Spring, Maryland.

_____        _____
*Signature of Party 1*                    *Signature of Party 2*