UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID NUYEN, | : |
| Petitioner, | : |
| v. | : Case No. 1:14-cv-01128-RMC |
| HONG THAI LY, | : |
| Respondent. | : |

### HONG THAI LY'S OPPOSITION TO DAVID NUYEN'S MOTION FOR PRELIMINARY INJUNCTION COMPELLING UNDERSIGNED COUNSEL TO ACCEPT SERVICE FOR HONG THAI LY

David Nuyen's motion is premature. This Court gave Mr. Nuyen until October 30, 2014, to serve Ms. Thai with a copy of his petition to vacate the arbitration award in her favor. This Court has also indicated its willingness to extend that deadline if necessary. Minute Order, Sept. 15, 2014. But instead of actually using any of the time he has been given to effect *proper* service, Mr. Nuyen has only asked *undersigned counsel* to accept service on Ms. Thai's behalf. Instead of making any effort to personally serve Ms. Thai in Venezuela through recognized means—under the well-defined terms of the Hague Convention or the Inter-American Convention on Letters Rogatory—Mr. Nuyen now asks this Court to do his work for him. This Court should decline that request as just the latest of his attempts to circumvent the law and use the legal system to harass Ms. Thai.

Mr. Nuyen, a convicted felon who in 2001 pled guilty in federal court to five counts including obstruction of an agency proceeding and making false statements, created three fraudulent partnership agreements in an effort to steal from Ms. Thai. Something that he had no more right to than the man in the moon. Ms. Thai, who has lived in Venezuela for years but was

1

eager to dispense with this frivolous claim in the most efficient way possible, submitted herself to the jurisdiction of the American Arbitration Association. And she won, handily. Not only did the arbitrator find that there was no written arbitration agreement between Ms. Thai and Mr. Nuyen, but he also rejected Mr. Nuyen's last-minute effort—raised for the first time during the arbitration—to argue that, in fact, the agreements were *oral* after all. Refusing to admit defeat, however, and still eager to press his frivolous claim against Ms. Thai, Mr. Nuyen now seeks relief from this Court. Ms. Thai is confident that she would win on the merits, should she be forced to litigate this case in federal court. But she shouldn't have to. She gave Mr. Nuyen his chance, and he lost. She should not have to continue to spend time and money to beat back Mr. Nuyen's lies—and she should certainly not have to make it easy for him. That is why she has not authorized undersigned counsel to accept service for her.

Service rules exist for a reason. And a litigant—especially one who is pressing a claim as patently fraudulent as Mr. Nuyen's—should not be able to circumvent them because they are *hard*. Ms. Thai respectfully asks this Court to reject his motion to compel undersigned counsel to accept service on her behalf and, instead, tell him to simply follow the rules as written.

## I.     Notice Is Not The Only Purpose of Process Service

Service is not an end in itself. Rather, it is the means to an end. That is, service is not assumed because there is notice, but, rather, there is adequate notice only if service is properly effected, creating jurisdiction for a court to hear the case. See, Cambridge Holdings Grp. v. Fed. Ins. Co., 489 F.3d 1356, 1361 (D.C. Cir. 2007) ("[U]nless the procedural requirements of effective service of process have been satisfied, the court lacks personal jurisdiction to act...."). Proper service is not "some mindless technicality." Williams v. GEICO Corp., 792 F. Supp. 2d 58, 65 (D.D.C. 2011) (quotation marks and citations omitted). And "unless the procedural

requirements of effective service of process are satisfied," this court "lacks power to assert personal jurisdiction over" Ms. Thai. Wilson v. Prudential Fin., 332 F. Supp. 2d 83, 87 (D.D.C. 2004). In Wilson, the plaintiff attempted to serve the defendant by sending a copy of the summons and complaint via certified mail to defense counsel's office. Id. at 88. An employee of the law firm received and signed for that letter. Id. The court held that such service was deficient. Id. Even though counsel represented the defendant in the instant action and an employee of the law firm accepted the letter, service was improper because counsel was not authorized, implicitly or explicitly, to receive such service. Id. at 89. Undersigned counsel is similarly not authorized to receive service for Ms. Thai. And to date, undersigned counsel has consistently told Mr. Nuyen that. In Wilson, the court held that the proper remedy was to order plaintiff to properly serve the defendant. Id. at 89-90. That is also the proper remedy here.

Further, neither responding to the Petition to Vacate nor moving to confirm the arbitration award constitutes a waiver of service of process. See Wilson, 332 F. Supp. 2d at 89 (rejecting plaintiff's argument that defendant waived the service-of-process requirement by addressing both sufficiency of service and the merits of plaintiff's claims within the same motion); Mattiaccio v. DHA Grp., Inc., No. 12-1249, 2014 WL 717846 at *3 (D.D.C. Feb. 26, 2014) (explaining that the "Federal Rules of Civil Procedure clearly allow a party to make multiple Rule 12 defenses at the same time," and rejecting Plaintiff's argument that filing a response on the merits waived the deficient service argument). A response to the merits of the claim in Wilson and a motion to dismiss for failure to state a claim in Mattiaccio did not result in

a waiver of service. Neither should Ms. Thai's Motion to Confirm and her Opposition to the Motion to Vacate result in a waiver.[1]

The attempt to serve process on undersigned counsel is no service at all; even if Ms. Thai has notice, it "cannot cure an otherwise defective service." Whitehead v. CBS/Viacom, Inc., 221 F.R.D. 1, 3 (D.D.C. 2004) (citations omitted) (granting a motion to dismiss for insufficient service). Given the patently fraudulent nature of Mr. Nuyen's claim and the expense Ms. Thai has incurred in defending it, there is simply no good reason for this Court to grant him an exception to the normal rules governing service.

II.   It Is Not in the Interests of Justice to Require Counsel to Accept Service Where Mr. Nuyen Has Not Exercised Good Faith in Attempting to Serve Ms. Thai

Mr. Nuyen's assertion that Ms. Thai's "due process rights…would be fully protected by service on her local counsel," is contrary to the Federal Rules of Civil Procedure, Ms. Thai's constitutional rights, and the Williams court's declaration that service is more than a technicality. 792 F. Supp. 2d at 65. But Mr. Nuyen wants this Court to ignore all of this simply because he wants an easier way out. While serving someone in Venezuela may be more difficult and expensive than asking the Court to order its equivalent in this country, it is hardly impossible. Venezuela is neither the Sahara nor Atlantis.

Instead of taking even a single step towards figuring out how to serve Ms. Thai in Venezuela, Mr. Nuyen has attempted to serve Ms. Thai through undersigned counsel no fewer than four separate times. When he initially filed his petition, Mr. Nuyen just mailed a copy of the complaint to undersigned counsel. This Court's July 18 Order—giving Mr. Nuyen until October 30, 2014, to serve Ms. Thai—made clear that serving undersigned counsel was insufficient. Even

---

[1] The motion to confirm was dismissed without prejudice by this Court on July 18, 2014. It is not currently pending before this Court, and Ms. Thai has not yet decided whether she will refile it.

so, Mr. Nuyen next attempted to serve Ms. Thai by mailing undersigned counsel a request for waiver of service on August 5. When told that undersigned counsel was not authorized to accept service on behalf of Ms. Thai, Mr. Nuyen made yet another attempt to serve Ms. Thai on August 25 by sending a process server—not to Venezuela, but to undersigned counsel's office. Again, undersigned counsel explained that he did not have authority to accept service on behalf of Ms. Thai. Then, once again, instead of using any of his time to attempt to serve Ms. Thai in Venezuela, Mr. Nuyen filed the instant motion asking this Court to make undersigned counsel accept service.

Mr. Nuyen's failure to take even baby steps towards proper service can hardly be described as being in "good faith," especially where this Court has specifically held that the type of service he attempted is insufficient, see Wilson, 332 F. Supp. 2d at 88-89 (holding that service was deficient when mailed to defendant's attorney, who was not authorized by the client to receive service of process, even though it was signed for by an employee of the office), and the Court's order itself required something more than service on undersigned counsel. Four attempts to make undersigned counsel accept service for Ms. Thai cannot possibly necessitate judicial intervention, especially prior to this Court's already-extended deadline for service.

While this Court certainly has the discretion to order alternate service, even the cases cited by Mr. Nuyen do not support such an order here. According to those cases, one of the main reasons courts allowed alternate service was that the country where the foreign defendant resided was not a party to the Hague Convention, United States v. Lebanese Canadian Bank SAL, 285 F.R.D. 262, 267 (S.D.N.Y. 2012), In re TFT-LCD (Flat Panel) Antitrust Litigation, 270 F.R.D. 535, 536 (N.D. Cal. 2010), or service under the Hague Convention was impossible. Jian Zhang v. Biadu.com Inc., 293 F.R.D. 508, 514-15 (S.D.N.Y 2013). For example, in Jian Zhang, the

plaintiff attempted to serve a defendant in China, which is a party to the Hague Convention. 293 F.R.D. at 510. Plaintiffs attempted to serve the defendant in China, but the country refused to effect service under the Hague Convention. Id. at 510-11, 514. Because of the two prior attempts to effect service on the defendant *in China*, and China's refusal to comply with the Hague Convention, the court ordered alternate service. Id. at 514. Mr. Nuyen has not made a similar attempt to serve Ms. Thai, despite acknowledging that Ms. Thai currently resides in Venezuela. Venezuela is a party to the Hague Convention and has not yet indicated (as China did in Jian Zhang) any unwillingness to comply with its obligations. While boldly asserting that Venezuela is "a country known to be hostile to the United States government and its Courts," Dkt. 8 at 1, Mr. Nuyen has not actually tested that assertion by actually trying to serve Ms. Thai there. If *not trying* to serve someone constitutes a "good faith" effort to serve them, then the term has no meaning.

In addition, two of the cases Mr. Nuyen cites deal with a foreign corporate defendant with established local counsel in the United States. See In re Flat Panel Antitrust Litigation, 270 F.R.D. at 538; TracFone Wireless, Inc. v. Distelec Distribuciones Electronicas, 268 F.R.D. 687, 690-91 (S.D. Fla. 2010). Alternate service on local counsel was acceptable, for instance, where the foreign company was in the middle of a multidistrict litigation case, local counsel represented the company in other federal courts as part of that case, local counsel had repeatedly answered complaints and filed motions for the foreign company in the same matter over two years, and local counsel had negotiated settlements with other plaintiffs against the company. In re Flat Panel Antitrust Litigation, 270 F.R.D. at 537. The Northern District of California allowed alternate service on local counsel based on the inference that counsel was working closely with the foreign corporation such that due process requirements were met. Id. But Ms. Thai is not a

major corporation like TracFone, heavily involved in a long, multidistrict litigation case in federal court with armies of lawyers defending her. To the contrary, Ms. Thai is an individual who submitted to arbitration based on three fraudulent partnership agreements and a desire to quickly dispose of Mr. Nuyen's fictitious claims—which she did. Mr. Nuyen's failure to make even the barest good-faith attempt to serve Ms. Thai in Venezuela does not constitute sufficient reason to force Ms. Thai to submit to the jurisdiction of this Court.

### III. Requiring Ms. Thai to Submit to This Court's Jurisdiction without Any Good-Faith Effort by Mr. Nuyen Would Gut the Process-Service Requirement.

Service of process is more than a mere formality. Allowing Mr. Nuyen to do away with the rules, at this stage of the case, simply because there is an easier option would turn the process-service requirement on its head.

Mr. Nuyen makes no assertions about any good-faith efforts to personally serve Ms. Thai, and for good reason—he has not made any such efforts. While this Court may act in the interests of justice, judicial intervention at this stage is premature. Mr. Nuyen's desire for easier service should not outweigh Ms. Thai's right—both constitutional and Federal Rules-based—to demand proper service. He isn't the first person who must effect service outside of the United States, or even in Venezuela, and he won't be the last. The cases cited by Mr. Nuyen show that judicial intervention and flexibility in process service are sometimes necessary in the interest of justice, but those circumstances do not exist here.

There are internationally agreed-upon means for service under the Hague Convention between the United States and Venezuela. If the Hague Convention did not apply, perhaps we would be in a different place. See Lebanese Canadian Bank, 285 F.R.D. at 267 (finding that "the Court's intervention is, clearly, necessary…[because] Lebanon is not a party to the Hague Convention, and thus alternative methods of service otherwise available under Rule 4(f)(1) are

unavailable here"). But Mr. Nuyen has not once attempted to use those means to serve Ms. Thai. Judicial intervention requiring counsel to accept service on Ms. Thai's behalf is inappropriate where opposing counsel's only attempt to serve Ms. Thai was through counsel after this Court's order requiring something more. See Trask v. Service Merchandise Co., Inc., 135 F.R.D. 17, 21-22 (D. Mass. 1991) (holding that the failure to make "at least [a] good faith attempt to comply with the Hague Convention" resulted in ineffective service of process). The law is clear that mailing or sending a copy of a complaint to the office of the lawyer who previously served the defendant (even in the instant action) did not constitute sufficient service. See Wilson, 332 F. Supp. 2d at 88-89 (holding that refusing to allow service by mail on established counsel because the client had not given counsel authority to accept service). Granting Mr. Nuyen's motion would effectively overrule Wilson and gut the reasons behind requiring service in the first place.

It is of no consequence that Ms. Thai submitted herself to the jurisdiction of the AAA to decide the disputes now brought before this Court. Ms. Thai could have challenged the jurisdiction of the AAA, but, because she could remain in Venezuela and testify via telephone, she thought that was the best way to dispose of Mr. Nuyen's frivolous and fraudulent claims. While Ms. Thai wants to get back to her normal life and business in Venezuela, Mr. Nuyen continues to bend the rules and avoid doing what the law requires him to do. There may be cases where it is appropriate to order local counsel to accept service for a client. This is not such a case.

### IV.    Conclusion

Mr. Nuyen did not attempt proper service when he initially filed his complaint. He did not attempt proper service when the court generously gave him a 120-day extension to serve Ms. Thai. Despite the recognized and acceptable service options under the Hague Convention and the

Inter-American Convention on Letters Rogatory, Mr. Nuyen refuses to even try. Ms. Thai, a resident of Venezuela, should not be forced to subject herself to this Court's jurisdiction because Mr. Nuyen is unwilling to attempt service like any other plaintiff. Because Mr. Nuyen has failed to prove that it is in the interests of justice for undersigned counsel to accept service on Ms. Thai's behalf, she respectfully asks this Court to deny his request.

DATE: September 19, 2014

Respectfully submitted,

_____/s/_____
Justin Dillon (D.C. Bar. No. 502322)
The Kaiser Law Firm PLLC
1400 Eye St. NW, Suite 525
Washington, DC 20005
(202) 640-2850
(202) 280-1034 (facsimile)
jdillon@tklf.com

*Counsel for Hong Thai Ly*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of September, 2014, the foregoing motion was filed with the Court's CM/ECF system, thereby sending notice to all counsel of record for this case.

                                          _____/s/_____
                                          Justin Dillon (D.C. Bar. No. 502322)
                                          The Kaiser Law Firm PLLC
                                          1400 Eye St. NW, Suite 525
                                          Washington, DC 20005
                                          (202) 640-2850
                                          (202) 280-1034 (facsimile)
                                          jdillon@tklf.com