UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| DAVID NUYEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1128 (RMC) |
| | ) | |
| HONG THAI LY, | ) | |
| | ) | |
| Respondent. | ) | |

_____)

**MEMORANDUM OPINION**

In this unusual case, the party who demanded commercial arbitration and lost his case, attempts to parse the Arbitrator's decision in a manner more nice than accurate in order to bring the same dispute to federal court.  However, David Nuyen's Petition to Vacate Arbitration Award is plainly without merit and the Arbitrator's decision is entitled to confirmation.  The Petition to Vacate will be denied and Respondent Hong Ly Thai's[1] Motion to Confirm Arbitration Award will be granted.

**I.   FACTS**

Sometime in 2013, David Nuyen filed a demand for arbitration against "Hong Thai Ly" under the Commercial Rules of the American Arbitration Association (AAA).  Arbitrator Matthew B. Ruble was appointed by the AAA and accepted.  Mr. Nuyen alleged breaches of three separate partnership agreements between the parties and/or an oral partnership agreement; he sought $5,000,000 in damages.  Ms. Thai denied that she and Mr. Nuyen had ever agreed to any written or oral agreements, but she was willing to submit to arbitration to decide

_____

[1] The Defendant's correct name is Hong Ly Thai; she is incorrectly named in both the caption here and in the arbitration award.  The Court will call her "Ms. Thai."

his claims.  *See* Def.'s Motion to Confirm, Ex. 2 (Answering Statement) [Dkt. 5-2] at 6-7 ("Ms.

Thai denies that the 'Partnership Agreement' submitted by Claimant is the document it purports

to be . . . .  However, in the interest of just and swift resolution, she agrees to submit this case to

the jurisdiction of the AAA.")  Arbitrator Ruble conducted a telephonic pre-hearing conference

and the matter was set for arbitration on May 27 and 28, 2014, in Washington, D.C.

Ms. Thai is a citizen of the United States who is living in Venezuela.  She

arranged to appear by Skype to testify at the arbitration hearing.  On that day, however,

connections could not be maintained and, without objection, Ms. Thai testified by telephone.[2]

Each of the three partnership documents on which Mr. Nuyen based his claims

contains an arbitration clause:

> Any controversy or claim arising out of or relating to this
> Agreement, or the breach hereof, shall be settled in arbitration in
> accordance with the rules, then obtaining, of the American
> Arbitration Association, and judgment upon the award rendered
> may be entered in any court having jurisdiction thereof.

Petition to Vacate Arbitration Award (Pet. to Vacate), Dkt. 1, Ex. B (Decision and Award of

Arbitrator) (Arbitration Award) at 1.  Mr. Nuyen drafted the alleged partnership agreements

himself, including the arbitration clause.  He argued that he and Ms. Thai had executed three

partnership agreements for the purchase, management and sale of three real properties in the

District of Columbia and Virginia.  He asserted breach by Ms. Thai.

One of the partnership agreements was allegedly signed and dated on April 10,

2002 and the other two were allegedly signed and dated on July 2, 2003.  In a prior lawsuit

involving these parties in the Superior Court of the District of Columbia, Mr. Nuyen contended

---

[2] In his recitation of flaws in the arbitration proceeding, Mr. Nuyen neglects to mention that Ms.
Thai testified and was cross-examined by telephone without objection, leaving the distinct, but
erroneous, impression that she was a complete and unexpected no-show.

that he and Ms. Thai had entered into a written partnership agreement on July 2, 2003.[3]  "By

contrast, at the hearing in this arbitration, Mr. Nuyen testified that he and Ms. [Thai]'s

partnership agreements were verbal, not written, and were reached in 2002 and 2003."

Arbitration Award at 2.  However, Mr. Nuyen could not identify any of the dates on which such

verbal agreements were reached and "utterly failed to prove the essential terms of any alleged

verbal partnership agreement."  *Id.*

   As to the signed partnership agreements, Mr. Nuyen testified at arbitration that

Ms. Thai had signed all three of them sometime in 2012, "sitting in a car in a parking lot" in the

United States.  *Id.*  The agreements were backdated to the alleged dates of oral agreements,

guessed at by Mr. Nuyen.  Arbitrator Ruble found this testimony "not only unusual, it was

incredible."  *Id.*

   To the contrary, Ms. Thai produced evidence that she was not in the United States

at the time she was supposed to have signed the backdated partnership agreements in 2012.  "It

was also proven, without contradiction, that Mr. Nuyen was being held in a federal penitentiary,

serving a sentence for fraud, on the dates when he later alleged verbal partnership agreements."

*Id.* at 3.[4]

---

[3] *Bae v. Nuyen, Intervenor and Third Party Plaintiff, v. Thai*, 2012 CA 003655 R(RP) (D.C.
Super. Ct. 2012).  *See* Resp. Mot. to Confirm [Dkt 5-2] Ex. 4 (Compl. of Intervenor and Third
Party Pl. Nuyen ¶ 9 ("On or about July 2, 2003, Nuyen entered into a written 'Partnership
Agreement' with Defendant Thai.")).

[4] Mr. Nuyen was sentenced to 24 months' incarceration for obstruction and making false
statements to officials of the Department of Housing and Urban Development (HUD) concerning
his failure to give lead hazard warnings to tenants in 15 low-income apartment buildings that he
owned and operated in the District of Columbia. *United States of America v. Nuyen*, Criminal
Case Nos. 01-0134, 01-0370 & 01-0401 (D. Md. 2002).  *See also* Answering Statement,
Attachment D (DOJ Press Release) (Nuyen "admitted that he sought to obstruct the HUD
investigation by backdating his signature, backdating tenant signatures, and directing tenants to
backdate forms . . . .").

Each party called an expert witness to testify to the authenticity of Ms. Thai's signatures on the alleged partnership agreements.  In "the most generous conclusion which could be drawn from the competing expert testimonies," Arbitrator Ruble found the evidence "in a state of equipoise," which "did not satisfy Mr. Nuyen's burden of proof."  *Id.*  Undermining Mr. Nuyen's case was the testimony of his own handwriting expert that Mr. Nuyen had told her, in April 2014, that the partnership agreements were signed in 2003, contrary to his May 2014 arbitration testimony, that the agreements were signed in 2012 and backdated.  *Id.*

Arbitrator Ruble's conclusions were expressed quite clearly:

- "Mr. Nuyen failed to prove the existence or terms of the real estate partnerships which he alleged."  *Id.*
- "Moreover, he did not prove any breach of contract, even assuming for the sake of argument that a contract existed."  *Id.*
- "Because Mr. Nuyen failed to prove the existence of either the verbal or written partnership agreements which he alleged, his claims will be denied."  *Id.*
- "Mr. Nuyen failed to prove any element of a legal cause of action against Ms. [Thai]."  *Id.* at 4.
- "The Claimant failed to prove the existence of any of the alleged partnership agreements with Ms. [Thai] with respect to the three subject properties, so all relief requested by the Claimant is hereby denied.  The Award in this case is in favor of the Respondent Hong [Ly Thai]."  *Id.*
- "This Award is in full settlement of all claims submitted to this arbitration.  All claims not expressly ruled upon are denied."  *Id.*

This suit was filed by Mr. Nuyen on July 2, 2014, seeking to vacate the Arbitration Award under 9 U.S.C. § 10.  On July 11, 2014, Hong Thai filed an opposition and a motion to confirm the Arbitration Award under 9 U.S.C. § 9 and the D.C. Revised Uniform Arbitration ACT (DCRUAA), D.C. Code §§ 16-4401 *et seq*.  *See* Mot. to Confirm [Dkt. 5].  Ms. Thai also requested leave to file a motion for an award of reasonable attorney's fees and other reasonable expenses under D.C. Code § 16-4425(c).  *Id.*  On September 4, 2014, Mr. Nuyen filed

an Amended Petition to Vacate Arbitration Award, Dkt. 7, in which he listed nine reasons the

award should be vacated.[5]  Mr. Nuyen failed to serve Ms. Thai in Venezuela and moved to

compel her D.C. arbitration counsel to accept service on her behalf.  *See* Emergency Mot. to

Compel Counsel to Accept Service [Dkt. 8] (Emergency Mot.).  The Court found that Ms. Thai

had voluntarily submitted to the jurisdiction of the Court by filing her motion to confirm the

award and denied the Emergency Motion as moot.  *See* Minute Order dated 10/24/14.  To resolve

the case at the least cost to the litigants, the Court set oral argument without further briefing.

Before the argument, Mr. Nuyen filed a motion for summary judgment, Dkt. 15.  Argument was

held on November 13, 2014, and counsel for both parties appeared and presented full argument.

The Court has considered the entire record before it.

## II.    LEGAL STANDARDS

The Federal Arbitration Act (FAA), 9 U.S.C. § 1-16, was passed by Congress "to

establish an alternative to the complications of litigation."  *Revere Copper & Brass v. Overseas

Private Inv. Corp.*, 628 F.2d 81, 83 (D.C. Cir. 1980).  Further, "arbitration is a matter of contract

and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

submit."  *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962).  Judicial review of an

arbitration award is narrowly limited.  *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 395-

96 (2002); *Revere Copper*, 628 F.2d at 83.  "Allowing undue challenges to arbitration awards

would defeat the finality and speedy dispute resolution expected of the arbitration procedure."

*Revere Copper*, 628 F.2d at 83 n.1.  "By agreeing to arbitrate, a party trades the procedures and

opportunity for review of the court [ ] for the simplicity, informality, and expedition of

---

[5] In the Amended Petition, Mr. Nuyen stated that he seeks to vacate the Arbitration Award under 9 U.S.C. § 10 and § 11.  *Id.* at 2.  Section 11, however, provides grounds by which an award may be modified or corrected and not vacatur.

arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (internal quotation

marks and citation omitted).

Pursuant to the FAA, a court must confirm an arbitration award unless there are

statutory grounds to vacate, modify, or correct the arbitrator's decision. 9 U.S.C. § 9.  Under

section 10 of the FAA, an arbitration award may be vacated where:

> 1) the award was procured by corruption, fraud, or undue means;
>
> 2) the arbitrators were partial or corrupt;
>
> 3) the arbitrators were guilty of misconduct in refusing to postpone the hearing or refusing to hear relevant and material evidence, or for misbehavior that prejudiced the rights of a party; and
>
> 4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made.

*Id*. at § 10(a).  In addition, an arbitrator's "manifest disregard of the law" can compel a court to

vacate an award.  *LaPrade v. Kidder Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001).

> Manifest disregard of the law "means more than error or misunderstanding with respect to the law."  Consequently, to modify or vacate an award on this ground, a court must find that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.

*Id.* (citations omitted).

Errors of fact and errors of law are not sufficient to cause *vacatur* of an arbitration

award.  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Teamsters*

*Local Union No. 61 v. UPS*, 272 F.3d 600, 604 (D.C. Cir. 2001);[1] *see also Denver & Rio Grande*

---

[1] The Court recognizes that labor arbitration, drawing its authority from the collective bargaining agreement, and commercial arbitration under the FAA are related, but distinct, legal *fora*. Principles may nonetheless be borrowed from one to the other.  *See Revere Copper*, 628 F.2d at 83 n.1.

*W.R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) (errors in arbitrator's

factual findings or legal interpretations do not justify review or reversal absent a showing of

manifest disregard). "[I]f an arbitrator is even arguably construing or applying the contract and

acting within the scope of his authority, the fact that a court is convinced he committed serious

error is not sufficient to overturn his decision." *Major League Baseball Players Ass'n v. Garvey,*

532 U.S. 504, 509 (2001) (internal quotation marks omitted). Further, issues of credibility and

relevance are for the arbitrator to decide. *Id.* at 510 (credibility); *Berlacher v. PaineWebber Inc.*,

759 F. Supp. 21, 24 (D.D.C. 1991) (relevance).

## III.   ANALYSIS

Oral argument in this case was extremely helpful because it clarified Mr. Nuyen's

position. He contends that once Arbitrator Ruble concluded that Mr. Nuyen had failed to prove

the validity of any of the three alleged written or oral partnership agreements, his task was done

and the Arbitrator had no authority to decide anything else or to issue an award because there

was, perforce, no *agreement to arbitrate*. Therefore, Mr. Nuyen asserts a future right to bring his

claims against Ms. Thai in federal court. When asked whether Mr. Nuyen would be estopped

from filing a lawsuit after losing at arbitration, his counsel insisted that Mr. Nuyen and Ms. Thai

had a "working arrangement" to divide the profits, if not an oral partnership agreement; that they

could work without a contract; that the "working arrangement" would support his claims in

federal court; and that the Arbitrator neither had authority to, nor did, rule on that question.

Counsel for Ms. Thai recounted her agreement to arbitrate despite her challenge

to the validity of the partnership agreements; her intention to testify by Skype until it was not

possible and then her presentation of testimony and response to cross-examination by phone,

without objection; Arbitrator Ruble's question to counsel whether Mr. Nuyen wanted a decision

7

on the alleged oral partnership agreement(s) in addition to the written partnership agreements and counsel's affirmative response, not denied here; and the Arbitrator's clear rejection of any alleged partnership agreements, oral and written.  Given the repeated efforts of Mr. Nuyen to obtain a monetary award or settlement on baseless claims—in Superior Court, arbitration, and federal court—Respondent's counsel asked the Court to confirm the Arbitration Award and grant Ms. Thai leave to file a motion for an award of attorney fees in this case.

The law is clear that parties who agree to arbitration have submitted themselves to that result except in rare circumstances.  "Absent excusable ignorance of a predicate fact, a party that does not object to the arbitrator's jurisdiction during the arbitration may not later do so in court."  *Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720-21 (D.C. Cir. 2008).  "[A]rbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent."  *Id.*; s*ee also United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 168 (3rd Cir. 1993) ("Once the parties have mutually agreed to refer a matter to an arbitrator, they are bound by his decision and may not later challenge his authority to resolve the claim").  Mr. Nuyen agreed to arbitrate any dispute under the alleged partnership agreements, in writing, and he agreed at the hearing to have Arbitrator Ruble decide his claim that an oral agreement was reached sometime in 2002 or 2003.  In a written pleading filed before the AAA, Ms. Thai agreed to commit the dispute to arbitration, even as she contended that the partnership agreements were fraudulent.  An arbitrator has the authority to determine whether a contract existed between contending parties.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546

U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

The Court concludes that Arbitrator Ruble had full authority from both parties to decide whether there were oral or written agreements (or both, as contended by Mr. Nuyen) between Mr. Nuyen and Ms. Thai for the purchase, management and sale of three real properties in the D.C. metropolitan area.  Because Mr. Nuyen did not contest Mr. Ruble's authority at the time of the arbitration, the objection was forfeited.

Mr. Nuyen has also advanced specific complaints about the Arbitrator, arbitration, and Arbitration Award.

> 1. *The Arbitrator focused almost entirely on the non-existent issue as to whether there was a written agreement to arbitrate, in spite of Respondent Ly [Thai] having agreed to arbitrate even though she claimed there was no written agreement to arbitrate.[6]*

This argument constitutes an admission by Mr. Nuyen that Ms. Thai agreed, in writing, to arbitrate the dispute so that it no longer matters whether she was bound to a joint written agreement to arbitrate.  It is, however, wishfully and factually incorrect to say that the Arbitrator focused on the question of a written agreement to arbitrate.  By their submissions to AAA, the parties both agreed in writing to arbitration.  Neither party contested the Arbitrator's authority at the hearing.  Contrary to Mr. Nuyen's contention, the Arbitration Award focused on whether there were written or oral agreements between Mr. Nuyen and Ms. Thai and, if so, whether Mr. Nuyen had proved a breach resulting in damages.  *See* Arbitration Award at 3

---

[6] *See* Am. Petition at 2-3 for all objections.  In the Amended Petition, Mr. Nuyen reduced his demand to $100,000, plus reasonable attorney fees, and demanded that the matter be remanded for arbitration by another arbitrator.  *Id.* at 3.  In the original Petition to Vacate, Mr. Nuyen sought jurisdiction to have his case heard in federal court.  *See* Pet. to Vacate at 2.

("Because Mr. Nuyen failed to prove the existence of either the verbal or written partnership agreements which he alleged, his claims will be denied."); *id.* at 3 n.2 ("Mr. Nuyen also failed to prove any compensable damages, and even if Mr. Nuyen had proven partnership agreements with Ms. [Thai], most of his claims would be barred by laches and/or limitations.").

> 2. *The Arbitrator based his decision almost entirely upon what he said was the testimony of Petitioner Nuyen.  However, there is no citation to where the testimony is found in the record, and nothing to show that the testimony was recorded and in the record.*

This argument is entirely baseless.  As reflected above, the Arbitrator based his decision on the testimony of multiple witnesses and the documentary evidence, not merely Mr. Nuyen's testimony.  The absence of a record of the arbitration proceeding is due to Mr. Nuyen's own failure to obtain a court reporter for the hearing.  *See* AAA Com. Arb. R. 28(a) ("Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three calendar days in advance of the hearing.").

> 3. *The Arbitrator based his decision on purported statements of Respondent Ly [Thai].  She was out of the country at the time of the Arbitration and did not appear in person to testify or be cross-examined.  The Arbitrator was unable to observe her demeanor, which is pertinent and material to the controversy, and where substantial rights of Petitioner Nuyen to confront and cross-examine his adversary were prejudiced.* [7]

This argument fails to acknowledge known facts; it was a failed effort to mislead the Court.  Ms. Thai has been living in Venezuela for some years.  That fact was well known to Mr. Nuyen before the arbitration hearing.  Arrangements were made to have Ms. Thai testify via Skype and all parties accepted that compromise.  That, too, was known to Mr. Nuyen before the

---

[7] Mr. Nuyen argues that the Arbitrator prejudiced his rights by refusing to postpone the hearing once it was clear that Ms. Thai would not appear through Skype, which, he contends, "arbitrarily den[ied] his fundamental right of 'due process' to cross-examine."  Mot. for Summ. J. at 6.

arbitration hearing.  However, the international connection could not be maintained and Ms. Thai

testified and was cross-examined telephonically, without objection; this point was made

forcefully at oral argument by Ms. Thai's counsel and *was not contradicted* by Mr. Nuyen.  If

Arbitrator Ruble felt any constraint in deciding the case because he could not observe Ms. Thai's

demeanor, he had the authority to continue the hearing.  Obviously, he was willing to accept her

telephonic testimony—both on direct and under cross examination.  Such was his prerogative

under the AAA Rules, which provide that, "[w]hen deemed appropriate, the arbitrator may also

allow for the presentation of evidence by alternative means including . . .  telephonic conferences

and means other than an in-person presentation. Such alternative means must . . . , when

involving witnesses, provide an opportunity for cross-examination." AAA Com. Arb. R. 32(c).

Furthermore, it is the arbitrator's duty to determine "what evidence is relevant and what is

irrelevant." *Fairchild & Co. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1314 (D.D.C.

1981).  Arbitration is a less formal process than a court; the rules of evidence need not be

enforced and a criminal defendant's "right to confront" a witness is not guaranteed to any party

in a civil case.  *See Howard Univ.*, 512 F.3d at 721 ("[I]n making evidentiary determinations, an

arbitrator need not follow all the niceties observed by the federal courts. The arbitrator need only

grant the parties a fundamentally fair hearing.") (quoting *Lessin v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.,* 481 F.3d 813, 816, 818 (D.C. Cir. 2007) (citations, internal quotation marks, and

alteration omitted)).

> 4.   *The Arbitrator refused to hear evidence pertinent and material to*
>      *the issue of an unwritten general partnership or agency by*
>      *operation of law based upon the actions and unspoken conduct of*
>      *Respondent Ly [Thai].   The Arbitrator prejudiced the rights of*
>      *Petitioner Nuyen . . . .*

It is clear from the Arbitration Award that Arbitrator Ruble heard all the

testimony that both parties wanted to present and, on the basis of the full record before him,

decided that no oral agreement existed between Mr. Nuyen and Ms. Thai.  As the Claimant, if

Mr. Nuyen wanted to also argue a theory of "unwritten general partnership or agency by

operation of law," it was in his hands to do so.  His argument here concedes that the theory could

have been presented to the Arbitrator.  Mr. Nuyen has offered nothing in this forum, even at oral

argument, to support the statement that Arbitrator Ruble "refused" to hear any testimony he

wanted to offer.  If one assumes, *arguendo*, consistent with this objection, that Mr. Nuyen made

an argument or proffer about general partnerships or agency relationships, it was clearly rejected.

*See* Arbitration Award at 4 ("All claims not expressly ruled upon are denied.").

> 5. *The Arbitrator failed to consider the continuing tort doctrine in making his decision, and exceeded his authority by failing to consider it . . . .*

In this argument, Mr. Nuyen has invoked Section 10(a)(4) of the FAA, which

authorizes a federal court to vacate an arbitration award "where the arbitrator[] exceeded [his]

powers."  9 U.S.C. § 10(a)(4).  The Supreme Court has instructed that a "party seeking relief

under that provision bears a heavy burden," as it is insufficient to show that the arbitrator

committed even a serious error.  *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068

(2013).  "It is only when the arbitrator strays from interpretation and application of the

agreement and effectively dispenses his own brand of industrial justice that his decision may be

unenforceable."  *Major League Baseball Players Ass'n*, 532 U.S. at 509 (internal quotation

marks omitted).  The dispute between Mr. Nuyen and Ms. Thai was grounded in contract (or

"agreement"), written or oral.  There was no tort, much less a "continuing tort," alleged.  Nor is

there any suggestion or evidence that Mr. Nuyen ever identified or argued for a continuing "tort"

theory of liability to Arbitrator Ruble or in this Court.  His oral argument did not explain how a contract claim could be advanced as a tort.  Mr. Nuyen has not, and cannot, meet the high threshold for seeking vacatur under Section 10(a)(4).

6. *The Arbitrator based his decision upon suggestion the written partnership Agreements [sic] had not been signed by Respondent Ly [Thai].  This is in spite of the Arbitrator's findings that the two opposing handwriting experts were in equipoise and there was no observation of the demeanor of Respondent Ly [Thai].*

This objection reflects a fundamental misreading of the Arbitration Award. Arbitrator Ruble did not base his decision upon a "suggestion," but upon his own findings of fact, based on the testimony of all the witnesses and the exhibits in the record.  It is true, however, that he found the "most generous" interpretation of the conflicting handwriting experts' testimonies to be in "equipoise," Arbitration Award at 3, and he did not observe the demeanor of Ms. Thai because she testified telephonically.  Finding the expert testimonies to be "in equipoise" did not require an observation of Ms. Thai as a witness.  In addition, except in rare circumstances not present here, a court does not second-guess an arbitrator's conduct of a hearing, determinations of persuasive evidence, or conclusions.  *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-72 (2010).

7. *The Arbitrator refused to consider pertinent and material evidence of damages to Petitioner Nuyen by Respondent Ly [Thai].*

After the arbitration hearing, Mr. Nuyen submitted a pleading that asked for an accounting concerning the properties in order to assess his damages.  Arbitrator Ruble refused to accept the pleading because it was too late and prejudicial to Ms. Thai.  Arbitration Award at 3-4.  "Moreover," Arbitrator Ruble wrote, "even if Mr. Nuyen's post-hearing filing were considered, the outcome of this case would not change, because Mr. Nuyen failed to prove any

element of a legal cause of action against Ms. Ly [Thai]." *Id.*  Since damages never became an

issue, Arbitrator Ruble did not err in refusing to order the accounting sought by Mr. Nuyen.

        8.  *The Arbitrator based his decision upon the lack of a written*
            *Arbitration Agreement, which is a matter that was not submitted to*
            *him for decision.*

Argument Number 8 is a reprise of Argument Number 1.  Arbitrator Ruble did

not decide whether there was a prior written arbitration agreement because both parties agreed,

in written pleadings, to submit the dispute to arbitration.  The question was whether there were

written or oral agreements between the parties.  Moreover, Mr. Nuyen invokes 9 U.S.C. § 11(b)

in this argument, which provides grounds for modification or correction of an arbitration award

but not for vacatur.

        9.  *The Arbitrator made an evident material mistake in the description*
            *of the property referred to in the decision as being only written*
            *partnership agreements, where the property was under an oral*
            *general partnership or agency by operation of law.*

Argument Number 9 is a reprise of Argument Number 1.  If Mr. Nuyen advanced

a theory of "oral general partnership or agency by operation of law" at the arbitration, it was

rejected.  *See* Arbitration Award at 4 ("All claims not expressly ruled upon are denied.")  If his

objection is that Arbitrator Ruble did not rule on a theory he did not advance, this attack on the

Arbitration Award concedes that he could have presented it and did not.  Here again, Mr. Nuyen

invokes 9 U.S.C. § 11(a), which does not provide statutory grounds to vacate an arbitration

award.

When challenged, the very existence of an underlying contract is a question for an

arbitrator.  *See Buckeye Check Cashing, Inc.*, 546 U.S. at 445-46.  In this instance, Mr. Nuyen

sought to enforce his rights under alleged written, oral, or legal partnership or agency obligations

owed to him by Ms. Thai.  At the instigation of Mr. Nuyen and the agreement of Ms. Thai,

Arbitrator Ruble heard all the testimony and took exhibits from both parties over two days in

May 2014.  The Arbitration Award concluded that Mr. Nuyen had failed to prove either oral or

written partnership agreements between the two parties and that all of his other claims were

denied.  The Court finds that Arbitrator Ruble made no errors in his factual or legal

determinations and did not dispense his own brand of justice in making his findings against Mr.

Nuyen.  Plainly, Mr. Nuyen has failed to clear the high hurdle required to obtain vacatur of the

Arbitration Award under the FAA.

Ms. Thai has requested leave to file a motion for an award of reasonable

attorney's fees and other reasonable expenses.  Mot. to Confirm at 17.  Ms. Thai asserts a right to

attorney's fees under the D.C. Code, which is the local law for the venue of this Court, where

Mr. Nuyen brought suit.  Having considered the matter thoroughly, the Court declines to make

such an award.

## IV.   CONCLUSION

There are no statutory grounds to vacate the Arbitration Award.  Mr. Nuyen's

arguments are meritless and unsubstantiated.  The Petition to Vacate, Dkt. 1, will be denied.  The

Motion to Confirm, Dkt. 5, will be granted.  A memorializing order accompanies this

Memorandum Opinion.


Date: November 25, 2014                                _____/s/_____

                                                                          ROSEMARY M. COLLYER
                                                                          United States District Court


15